# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| WENDY M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. ED CV 19-02380-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Wendy M. ("Plaintiff") applied for Social Security Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning March 26, 2016. See Dkt. 14, Administrative Record ("AR") 383, 385, 411.[1] After being denied initially and on reconsideration, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on September 20, 2018. See AR 38-68.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations the administrative record are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ issued an unfavorable decision on November 8, 2018. See AR 19-32. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. See AR 24. At step two, the ALJ determined that Plaintiff had the severe impairments of "Degenerative Disc Disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, [and] Degenerative Joint Disease of the right hand." AR 25. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. See AR 25. At step four, the ALJ found that Plaintiff could perform her past relevant work as an administrative assistant (DOT 169.167-010), administrative assistant/officer manager (DOT 167.167-034), and customer order clerk (DOT 249.362-026). See AR 30. Accordingly, the ALJ denied benefits. See AR 32.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of

Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).

## III. DISCUSSION

The parties dispute whether the ALJ erred in (1) determining Plaintiff's RFC and (2) evaluating her subjective symptom testimony. See Dkt. 18, Joint Stipulation ("JS") at 4.

### A. RFC

Plaintiff argues that the ALJ failed to consider significant and substantial medical evidence of record in assessing her RFC. See JS at 5-11.

The RFC "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must assess a claimant's RFC "based on all the relevant medical evidence and other evidence." Id. §§ 404.1545(a)(3), 416.945(a)(3). It is ultimately an administrative finding reserved to the Commissioner. See id. §§ 404.1527(d)(2), 416.927(d)(2) ("[T]he final responsibility for deciding [your RFC] is reserved to the Commissioner."). A district court must affirm the ALJ's determination of a claimant's RFC if the ALJ applied "the proper legal standard" and "his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ found that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she could:

> occasionally lift up to ten (10) pounds and may lift less than ten (10) pounds frequently; may frequently climb ramps and stairs; may occasionally climb ladders, ropes and scaffolds; may frequently balance, stoop, kneel, crouch and may never crawl; must avoid concentrated exposure to hazards such as machinery or unprotected heights. The claimant may frequently handle and finger with upper right extremity. The claimant may not look

      down for more than ten (10) minutes at a time without a change in neck position.

AR 25.

    Plaintiff contends that the ALJ "selectively extract[ed] specific random references" and "cherry pick[ed the] evidence" to "justify her interpretation of the medical evidence." JS at 9-10. The Commissioner responds that the ALJ thoroughly discussed the evidence of record and supported her conclusions with references to the medical source opinions and objective clinical findings. See JS at 11-14.

    Evaluating Plaintiff's argument is difficult, because she summarizes several years of her medical records but fails to specifically identify what evidence the ALJ failed to consider or how it would specifically necessitate a more restrictive RFC. When interpreting the evidence and developing the record, "the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and internal quotation marks omitted). And to the extent Plaintiff merely offers an alternative interpretation of the record, that is an insufficient basis for reversal. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

    Regardless, the Court finds that the ALJ's RFC is supported by substantial evidence. With respect to Plaintiff's cervical spine, the ALJ noted that x-rays performed in August 2010 and October 2015, when compared, showed no significant changes. See AR 27 (citing AR 814). The ALJ recognized, however, that diagnostic imaging corroborated the existence of multilevel cervical degenerative disc disease with radiculopathy, which prompted the ALJ to adopt limitations to Plaintiff's rotation of her neck. See AR 25 (limiting Plaintiff to no more than ten minutes of looking down without

a change in neck position). That limitation was consistent with the opinions of the various treatment providers. For example, Dr. Hamilton Chen, who treated Plaintiff for neck and upper extremity complaints, observed that Plaintiff had limited range of motion in her neck but had otherwise normal motor strength, normal station and gait, normal reflexes and sensation, and normal movement of her extremities. See AR 580-81, 584, 689.

Regarding Plaintiff's lumbar spine, the ALJ noted that a December 2016 x-ray revealed moderate lumbar degenerative disc disease with osteoarthritic changes. See AR 27 (citing AR 847). And despite physical examinations that described Plaintiff's gait as "normal," see, e.g., AR 822, the ALJ considered at least one instance of "cautious gait," see AR 28 (citing AR 824). The ALJ also found that the records indicated that Plaintiff had limited range of motion in her lumbar back. See id. The ALJ went on to consider and adopt postural and environmental limitations that were supported by the diagnostic imaging and positive examination findings. See AR 25.

For Plaintiff's right hand and wrist, the ALJ noted that MRIs showed mild degenerative changes and osteoarthritis. See AR 27 (citing AR 550-51). However, wrist and hand examinations indicated that Plaintiff's range of motion was normal. See id. (citing AR 756). Indeed, Dr. Zachary Hadley, Plaintiff's treating hand surgeon, consistently noted that Plaintiff exhibited normal range of motion in her wrists, normal motor strength, and normal sensory functioning. See AR 199, 203-04, 210-13, 221-22, 233. On February 2, 2018, Plaintiff underwent carpal tunnel release surgery; a month later, she rated her pain as a 3/10 and stated her range of motion had improved. See AR 720. Based on the treatment evidence, the ALJ limited Plaintiff to frequent handling and fingering with the upper right extremity. See AR 25. Plaintiff contends she should have been limited to "no more than occasional use of the

right dominant upper extremity," JS at 10, but does not challenge the ALJ's findings or explain what medical evidence supports additional limitations.

Plaintiff faults the ALJ for ignoring evidence, such as the fact that she has received "repeated steroid injections in her right upper extremity as well as repeated cervical spine epidural injections and in addition surgery on her right upper extremity." JS at 9. This claim is not accurate. The ALJ explicitly referenced, for example, Plaintiff's epidural injections and her carpal tunnel release surgery in determining her RFC. See AR 28. Plaintiff also takes issue with the ALJ's reference to statements from Plaintiff's orthopedic surgeons that she could do "regular duty," which the ALJ took to mean that Plaintiff could return to work. See AR 734 ("Work Status: Regular Duty"), 744 (same), 747 (same), 751 (same), 758 (same). But Plaintiff does not offer a different interpretation or suggest that her doctors believed that her impairments prevented her from working.

Accordingly, the ALJ did not err in determining Plaintiff's RFC.

**B.   Subjective Symptom Testimony**

    **1.   Testimony**

In her applications, Plaintiff alleged an inability to work due to pain in her neck, lower back, and hands. Her pain is brought on by jerking motions, repetitive postures, sleeping, looking up or down or side-to-side, and any quick natural movements. See AR 431. Plaintiff described her pain as "constant" but that the stabbing pains in her skull area are random and last about an hour. Id. Plaintiff tries to sustain her "usual activities" until a movement she does causes pain. Id. She is unable to go on fast walks, jog, garden, or do yard work, but can walk to her neighbors, stand and sit for 15-20 minutes at a time, do light housework without assistance, and drive. See AR 432-33. Plaintiff stated that while she stopped working in September 2012, her condition became severe enough to prevent her from working on January 1, 2013. See AR 411.

At the hearing, Plaintiff testified that she last worked in 2012 and was laid off due to budget cuts. See AR 48. In 2011, Plaintiff developed back spasms and pain in her neck. See AR 50. She also began missing work due to migraines. See id. Plaintiff drops things, falls, and has constant pain in her neck and lower back. See AR 51-52. She gets temporary pain relief with traction and physical therapy, but she develops migraines after some treatments. See AR 52. Plaintiff has "no motor control anymore," which prevents her from enjoying hobbies such as sewing. AR 55-56. She does simple household chores like vacuuming when she can. See AR 58-59. Sometimes the pain is so bad that Plaintiff sits in bed all day. See AR 59.

**2. Law**

The ALJ must make two findings before finding the claimant's pain or symptom testimony not credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted). Second, if the claimant has produced that evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### 3. Analysis

The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 27. Specifically, the ALJ found that Plaintiff's statements were inconsistent with (1) the objective medical evidence, (2) treatment records showing improvement, and (3) her activities of daily living. See id.

First, the ALJ found that the medical evidence as a whole did not support Plaintiff's alleged limitations. See id. This finding was supported by substantial evidence. For instance, Plaintiff testified that she has no motor control and constantly drops things. See AR 51-52, 55. On physical examination, however, Plaintiff regularly exhibited normal range of motion in her wrists, normal motor strength, and normal sensory functioning. See AR 199, 203-04, 210-13, 221-22, 233, 574. Indeed, Plaintiff's orthopedic surgeon, Dr. Skubic, observed that there were no findings to suggest significant radiculopathy on motor examination. See AR 208. Additionally, although Plaintiff had limited range of motion in her neck, she had normal motor strength, normal station and gait, normal reflexes and sensation, and normal movement of her extremities. See AR 580-81, 584, 689. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Second, the ALJ found that Plaintiff's condition improved with treatment. See AR 27. "Impairments that can be controlled effectively with medication are not disabling . . . ." Warre v. Comm'r of SSA, 439 F.3d 1001,

1006 (9th Cir. 2006). This finding was supported by substantial evidence. Plaintiff was referred to physical therapy to treat her cervical neck area, lower back, and upper extremities. Plaintiff's symptoms showed immediate improvement with physical therapy. See, e.g., AR 624 ("[Plaintiff] reports that overall she feels that therapy has been helping her feel better. . . . [Plaintiff] had immediate relief from symptoms with manual therapy."), 630 ("Mechanical traction continues to provide [Plaintiff] with relief from symptoms."), 632 ("Manual therapy provided some relief for pain and muscle guarding. Good response to [therapy] with no increase in pain."). Plaintiff appeared to get worse only after she stopped being compliant with her exercises and was eventually discharged for lack of attendance. See AR 615 ("The [Plaintiff] is being discharged due to lack of activity, and poor attendance as currently clinic policy dictates."), 669 ("[Plaintiff] states she is stiff today. She has not been compliant with her home exercises."). Additionally, Plaintiff reported that she received significant relief from pain medications and after receiving cortisone injections, see AR 184, 190, 198, 202, 210, 213, 217, as well as from her carpal tunnel release surgery, see AR 720 ("[Plaintiff] rates her pain on a scale of 1/10 a 3. [Plaintiff] states she has improved with her range of motion.").

Plaintiff contends that any suggestion that treatment has improved her condition is contradicted by the fact that she has undergone steroid injections and surgery. See JS at 16. These aggressive treatments certainly demonstrate that her impairments are severe. But as the Commissioner points out, see JS at 21, the benefits that Plaintiff has derived from those treatments are a valid consideration in evaluating the limiting effect of her impairments. See Bettis v. Colvin, 649 F. App'x 390, 391 (9th Cir. 2016) (holding that ALJ appropriately discounted claimant's testimony on the ground that his "condition improved with treatment"). All told, Plaintiff's positive response to treatment, even if it did not eliminate her pain entirely, undermined her reports regarding the fully

disabling nature of her pain. A different ALJ may have found Plaintiff more credible or weighed the evidence differently, but this Court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

Third, the ALJ found that Plaintiff's allegations were inconsistent with her activities of daily living. See AR 27. Specifically, the ALJ found that Plaintiff's "significant gardening and extensive yardwork" were inconsistent with her testimony that she could barely get out of bed and was mostly unable to use her hands. Id. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014).

Plaintiff does not contest this finding, which is supported by substantial evidence. As noted above, Plaintiff stated in an April 2016 questionnaire that she could no longer garden or do yard work. See AR 432. Plaintiff also testified that she constantly drops things and has "no motor control anymore." AR 55. In April 2017, however, Plaintiff reported that her back was sore from "lots of yard work over the weekend." AR 626. A week prior, Plaintiff reported back soreness from "playing with kids yesterday and picking them up." AR 628. In May 2017, Plaintiff again reported doing "quite a lot of gardening over the weekend." AR 616. The ALJ was permitted to consider these inconsistencies in assessing her credibility. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Accordingly, the ALJ gave clear and convincing reasons in support of the adverse credibility finding. Remand is not warranted on this claim of error.

/ / /
/ / /

10

## IV. CONCLUSION

The decision is the Social Security Commission is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: September 16, 2020

DOUGLAS F. McCORMICK
United States Magistrate Judge